This is for this morning, and the first is In Re Lipitor Antitrust Litigation numbers 14-4202-4206, 4602, and 4632. And we have Mr. Sorensen, Mr. Milne, Mr. Lefkowitz. And this should go on, I guess, but why don't we start with Mr. Sorensen, I guess. Good morning, Your Honors. I'd like to reserve two minutes for rebuttal, if that's okay. That's fine. Your Honor, David Sorensen for the appellants. Your Honors, in Christensen v. Colt Industries, the Supreme Court stated, and I'm quoting from page 810, a claim supported by alternative theories in the complaint may not form the basis of 1338A jurisdiction unless patent law is essential to each of those theories. Here, all claims... Now, you don't advance a definition of a claim or a theory, do you? I'm sorry? Do you advance, in your brief, a definition of a claim or a theory as the other side does? At least they try to define claim. You don't define a claim anywhere in your papers, do you? No, we don't. And so what's the difference between a claim and a theory? Your Honor... Because Christensen doesn't really answer that. Right. A claim would be a set of facts, as alleged, that under the law would give rise to a right for relief. A theory are alternative ways, both a mixture of legal and factual elements, that can support that claim. We have monopolization and restraining trade claims that are each supported by alternative theories. None of them require, as an essential element, resolution of a substantial question of patent law. Let's stop right there, please, because I want to know why invocation of Walker Process is not substantial here, or does not introduce a substantial question of patent law. Well, first, it is not a separate claim anywhere in the complaints. Well, that puts the rabbit in the hat, because you've not told us what a claim is. So I'd like to back away right now from claim and ask why there is insubstantiality in the face of your invocation of Walker Process. Well, first, after Gunn v. Minton, I don't think it's clear that Walker Process in an antitrust case presents a substantial question of patent law. I don't think it's clear after Gunn v. Minton. But returning to the claims, we are master of the complaint. Yes, and as master, you have introduced Walker Process. You could have had a clean, non-Walker Process-based Actavis type of claim here, right? But we've combined them as an overall scheme, which is a recognized cause of action. Scheme is a good word, I suppose, at least allegedly here, because haven't you recited facts suggestive of a long period of time where there was fraud committed on the patent office by defendants? The length of time is not relevant to the jurisdictional question. In D.D.A.V.P., there was a Walker Process theory, just like here. In D.D.A.V.P., the plaintiffs pled one count, combined in that count an overall scheme claim just like this case. It included Walker Process. It included sham litigation. It included walk-through listing, like here. It also included a sham citizens petition in one count. The Second Circuit there, following the well-pleaded complaint rule and the fact that the plaintiff is master of his complaint, examined that and said the fact that the sham citizens petition theory would not reach as far back as the Walker Process fraud is irrelevant for jurisdictional purposes. It may relate to damages, the amount of damages ultimately recoverable because the damages relates to the length of time, but it has no meaning or relevance to the jurisdictional inquiry. And the Second Circuit rejected the motion of transfer and kept that case and did not look at it and slice it up and say, well, plaintiffs, you could have taken the Walker Process allegations and put them in a separate count. We could have, and we didn't. Counts really don't help us here, do they, in terms of trying to separate out what a claim is? Well, the way we plied it is in separate counts.  But I think it does help you because I think that the jurisdictional analysis looks at the well-pleaded complaint. That's what Christiansen teaches. That's what Holmes teaches. You look at the well-pleaded complaint. You don't reimagine it. You don't imagine how it's going to play out later. You don't reconfigure it. You don't rechop it up. You look at the well-pleaded complaint. If there's a violation of the well-pleaded complaint rule, if under recognized doctrine, there's a lot of law on this, if we purposely omitted the pleads and federal elements that the court thinks, well, you're trying to avoid federal jurisdiction, that's different. There's a whole recognized body of law about that. We didn't do that. Is there anything in the rules of civil procedure that are helpful to us in trying to define a claim, at least for purposes of this case? You have provided us with a suggestion that I think is consistent with a considerable amount of case law. It's broadly defined. We're looking at an aggregate set of operative facts. But do the rules of civil procedure help us in any way? Your Honor, they cited a case that quoted Black's Law Dictionary. Black's Law says, Claiming to demand on one's own or as one's right to assert or urge to insist. And then the Black's Law, at least on my desk, separates out the cause of action as the fact or facts which give a person a right. There's been a change in the definition in several recent editions of the dictionary. Fair enough. We don't challenge that. And this court, by the way, has cited with approval of that definition. Fair enough. We don't challenge. The question is, could the plaintiffs here have repled their complaint in a different way? Could we have taken the walk of process allegations, reconfigured them, and if we chose to, held them differently? We could have. I'm not challenging that. The point is that we have a right under the Well-Faith Complaint Rule and under the recognized doctrine that you're allowed to plead an overall scheme, as in dense part on the page, as recognized incontinent, or we've pled an overall scheme because that's what the underlying facts match up with. There was an overall scheme that included walk of process fraud but extended past that and included sham citizen's petition and reverse payment at issue and additional non-patent-related activities settling in a way with other generics to keep the bottleneck in place. My time is up. Mr. Sorensen, I have one question, if I could. How does, at this jurisdictional stage which we're in, how does the Supreme Court's rejection of the scope of the patent theory in Actavis impact our appellate jurisdiction, if at all? Well, it makes clear that reverse payment theories do not arise under patent law. They're not patent cases. You don't need to look at the patent validity. You don't need to re-examine infringement under Actavis. You can use the size of the payment. If it's necessary, it's a proxy for the patent issues. And the issue is whether the payment is large and induce the generic to delay entry or drop it to patent fight. And the Supreme Court was inundated with briefs posing this as a patent issue, and the opinion makes clear it's an antitrust issue and there's no need to have a mini-patent case inside the antitrust case. And so that aids the jurisdiction, makes it clear that the fact that the reverse payment theory does not mandate jurisdiction in the Federal Circuit, jurisdiction would be here. Again, my time is up. That's okay. The fraud, the Walker Process fraud before the PTO, did that cause an antitrust injury when the fraudulent patent issued, or was the antitrust injury years later when the valid patent expired? The Walker Process fraud causes injury when Pfizer uses it to stop generic competition. So it sues Rambaxi and delays its entry. That's when the antitrust injuries are rising because it's slowing down generic competition and therefore keeping prices high. So when it actually occurs, the fraud happens in real time in the past. The fraud occurred in 1993, right? Yes. And the valid patent expired in 2010? 2010, yes. March of 2010? Yes. So is your claim that the monopolization occurred from March of 2010 through November of 2011? Yes. We're now challenging the 893 patent, which is the patent you're referring to. Which you're challenging the 995 patent. Yes. And then that also gives rise to the reverse payment theory that we're alleging. Also, the citizen's petition was filed in this time period, and also after the Rambaxi reverse payment agreement, Pfizer continued to settle with other generics to keep the bottleneck in place. Again, my time is up, but if there are any further questions. Anything else? Okay, we're going to close. May it please the Court. Okay, one second. Thank you. May it please the Court. Scott Perwin for the Walgreens Plaintiffs. Judge Smith, the Walker process issue may or may not be substantial. That's the gun versus mitten question. But it isn't necessary. And both substantiality and necessity are required under gun versus mitten and other cases. So if any of the claims set forth in the plaintiff's complaints can be resolved without resolving the Walker process issue, then this Court retains jurisdiction. The Federal Circuit doesn't have jurisdiction. And we have in our complaint a section, and I'm one of the retailer complaints. There are four essentially identical retailer complaints with one exception. We have a section in our complaint that says claims for relief, and it sets out the claims for relief and the facts that underlie each of those claims. And in each of those cases, the claims that we assert, there are four of them, are based either in whole or in part on non-patent-related misconduct, just as in Christensen. The Court can determine what a claim is by looking at the Supreme Court's decision in Christensen, which says that the plaintiffs in that case had a monopolization claim under Section 2 and a group boycott claim under Section 1, and then there were different elements of each of those claims, some of which involved patent law and some of which did not. And the Supreme Court held in that case that the regional circuit had jurisdiction and not the Federal Circuit. This fact pattern of having an overall anti-competitive scheme that involves both patent-related issues and non-patent-related issues is not unusual, particularly in pharmaceutical cases. This Court, a few weeks ago, decided a case called Heartache Drug. Judge Ambrose was on the panel. And in that case, the allegations were similar to the allegations in this case. I'm reading from the complaint. Defendants engaged in numerous unlawful anti-competitive acts and practices, including filing sham patent lawsuits, fraud upon the U.S. Patent and Trademark Office, and product copying to preclude pharmacies from being able to substitute generic gadafloxacin. And in that case, no one even raised the issue of whether that case should go to the Federal Circuit. It stayed in the Third Circuit. The Third Circuit ruled on the merits. And had the Court been concerned about the possibility of no jurisdiction in the Third Circuit, the Court would have raised that sui sponte. So obviously that case didn't decide the jurisdictional issue, but it certainly assumed jurisdiction and the Third Circuit, in that case, exercised jurisdiction. That's the same kind of allegations that we have here. We have several claims that are based solely on the reverse payment agreement, which does not arise under patent law. We have several claims that include broader misconduct by Pfizer, that include some patent-related issues, but in none of those... Aren't you hurting yourself by using the word claims? Judge, you have to use the word claims. That's what the Supreme Court says you look at. I thought you looked at theories. No, you look at claims, not theories. That's what Christensen said. And if there's a theory... You look at a theory that supports a claim. Isn't that right? There could be alternative theories that support a claim, one of which could be patent-related, one of which could not be. But if Walker Process is a separate claim from the monopolization antitrust claim, aren't you hurting yourself? Well, Walker Process is simply a way of pleading a monopolization claim. And if there were a stand-alone Walker Process claim, then we would be arguing about whether that's substantial or not. So is your argument that you're bringing a monopolization claim that started off in 1993 with a fraud on the PTO and later developed into a monopolization claim from March of 2010 through November of 2011? Well, we've alleged a monopolization claim against Pfizer based on fraud on the patent of Treasurer's office, sham citizen's petition, a reverse payment agreement with Randaxi, thwarting other generics... My question to you is, are those claims or are those theories supporting a monopolization claim? Those are theories. That's different from what you said about three minutes ago. I said you have to look at the claim, the whole claim, and look at the theories that underlie the claim. Some of those may be patent-related. But that's not sufficient to create Federal Circuit jurisdiction. They have to all be patent-related in order to create Federal Circuit jurisdiction. That's what Christensen says. And the only claims that we've alleged include non-patent-related conduct or are exclusively based on non-patent-related conduct. So if those claims can be decided without passing on patent issues,  The Federal Circuit does not have jurisdiction. That's what you have to do. You have to look at the complaint, figure out what the claims are, figure out if there are non-patent elements in those claims, and if the answer is yes, this Court has jurisdiction. All right. Thank you, Mr. Aliotta. Thank you. May it please the Court, my name is Joseph M. Aliotta. I represent RP Healthcare. I have been allotted three minutes. I respectfully request to have at least one minute for rebuttal, if I might. I can get through this in two minutes. We'll give you the rebuttal then. Thank you very much, Your Honor. We're not challenging any patents. Our case was the first case. We discovered it for a long time. We have charged that these folks, after the expiration of their patents, entered into an unlawful agreement to divide customers, territory, and fix the price. Does your complaint clearly allege the citizenship of all the parties? Does it allege the citizenship? I'm thinking about diversity of jurisdiction here. The diversity of jurisdiction. You've made claims under state law, right? Pardon me? You've made claims under state law. Is that correct? That's correct. We believe, Your Honor, we are all from California. Pardon me? That's your current right of claim. Yes, that's the claim we have. We originally also had the unfair competition, also in California. And this is after the fact. Now, what we did later is that we joined two of the insurance companies because we, as pharmacists, received letters from them where they were going to go along with Lipitor and boycott the generics after the patents had expired. And we joined them as defendants. We kept them in the case until, of course, they agreed to sell. But we have two claims here, really. One, we certainly shouldn't be in the federal circuit. And two, we shouldn't even be in federal court. Well, you do not allege, am I correct, that Pfizer obtained the 995 patent by fraud? No. You do not allege it. But didn't you choose in your complaint to invoke Walker Process? There's a reference in paragraph 114 of your complaint. Why? Yes. The reason that we put in that in the first complaint, and then we finally took it out, because it was background. It was just like continental law. It's the background evidence of what was going on. We didn't care one way or another because we had the admission from the CEO, who was the chairman and CEO, and he admitted that as of the June date, at least, if not the March 2010 date, at least as of that date, these folks got together, had an agreement, flat out, divided the territory, divided the customers, and fixed the price. And we did try. Our first case that we filed before anybody else filed, our first case, we were trying to stop the execution of the contract. We made an attempt to try to do that. Okay, that didn't work. Then we got thrown into, not thrown in, we were removed, to the federal court. And we sought to get remanded. A number of times. It must have been five or six times. So we're here, really, also on a 12-B-1 issue. So does your complaint clearly allege the citizenship of all the parties? Yes, Your Honor. It does? Yes, Your Honor. And there's something else, too, that I just might add. And the defendants refused to do just that, Your Honor, because they have an LLC as well, and they are required to show the citizenship. The complaint that you say clearly does allege the citizenship of all the parties, what are those particular states that are involved? California. All California? Well, plaintiffs and defendants. What states are involved? All the plaintiffs are California. Some of the defendants, two of the defendants were California. Other defendants operated in California. Okay. You're saying that's citizenship in California? Yes. If they are organized elsewhere? They may not be organized elsewhere, but some of the defendants, as part of the combination, are in California. They were Californians. And what we charged was is that when those larger companies came in, and this is all after the patents had expired, when the other companies came in, we charged them with taking a bribe in order to push Lipitor when they had the availability of a generic. And we were talking about a price differential from something like $4.50 to $0.35. Mr. Galeota, weren't the non-diverse defendants dismissed in this case? Yes, they settled. Okay. They agreed to settle. All right. First of all, the district court found federal jurisdiction on the fact that it's likely that defenses would be raised that would involve patent law. That was in error, wasn't it? Absolutely. That's directly contrary to the Supreme Court. Okay. So the question is here whether or not there's diversity of jurisdiction. You're arguing that there isn't. You want to go back to California. Yes, we do. Okay. But does the record show us enough for us to make a determination whether there is or isn't diversity of jurisdiction? The way it began to develop, Your Honor, was that we first saw and investigated and found out about the CEO and the chairman. And he made just a flat-out statement. And then we discovered, of course, the image. Well, Judge Fischer asked about the condition of the record. That's what I'd be interested in knowing. The what, Your Honor? The condition of the record. The record. The condition of the record was then, after we had filed, then we received these notices from these insurance companies in California, and we made them defendants. And after we made them defendants, we continued with Judge Sheridan for a number of years, I think. And finally, those two decided to settle because we had very strong evidence that they had received remuneration and attempted to boycott on their lists any generic caliper talk. So they were charging us now as our PDMs as well as the price checks. After the settlement, the plaintiffs and defendants that remain, are they all diverse? Except for we don't know. One of the defendants is an LLC. We have challenged them. So the record doesn't show, doesn't really establish whether there's diversity. If you're not sure about the LLC. No, the record establishes that we were the defendants. We had defendants in California. One of the defendants. Initially. An LLC, yes. They never responded as to whether or not their citizens or any, each one of them or any one of them was in California. And we challenged them to do that. Okay. All right, thank you. We'll get you back in rebuttal. Thank you very much, Your Honor. I'm pleased to court. Thank you. Mr. Mill. Thank you, Your Honors. I'm pleased to court Robert Mill on behalf of Pfizer. I'd like to start with the Federal Circuit jurisdictional questions, if I could. Sure. And to start with where you started, Judge Amber, which is on the definition of claim versus theory. I think that's critical to the analysis here. I think you can derive, there is no specific definition laid out in Christensen or any of the other cases, but I think when you look at it. In fact, Christensen deliberately seeks to avoid some kind of definition that would be applicable in too many places. I think that's right, Your Honor. I think it was recognition that the facts and circumstances vary across the board. But I think when you look at the totality of the law, there are clues. So one of the key differentiating factors between a claim for jurisdictional purposes and a theory is what are the operative facts? Are they sufficiently different where you can, as a logical matter, the broader case from the Second Circuit spoke in terms of looking at the logic of the situation. Well, then as a follow-up question to what is a claim, and since it would appear that even the Supreme Court acknowledges that defining a claim, at least for use in all contexts, is if not dangerous, impossible, how would you define an operative set of facts or an aggregate of operative facts? Well, I think you have to look at the substance of what is being alleged. And I think this case is not even close. The cases here are not even close, especially when you compare as against the situation in Christensen. So Christensen was an antitrust case in which there was essentially one, and I'm not going to use claim versus theory here, one instrumentality, if you will, of claimed wrongdoing. There it was an allegedly false cease and desist letter where the plaintiff said there were three different reasons for falsity. And only one of those reasons arose under federal patent laws. The other two did not. And so there it was easy for the court to conclude. Which case are you talking about now? Christensen. There it was straightforward for the court to conclude that those alternative reasons for falsity were theories supporting that common claim of not monopolization but that the cease and desist. I agree with you. That's the way I read Christensen. But if you contrast that with what we have here in these complaints, you have at least four different operative instrumentalities, if you will, of claimed wrongdoing. Of course, we disagree with all of them, and the court has dismissed all of them. But you've got the claim of Walker of fraud on the patent office relating to the 995 patent, Walker process fraud. That's one claim or instrumentality of wrongdoing. You've got a separate claim of sham patent enforcement of two different patents, the 511 and the 740 patents. Then you've got the activist claim, and then you've got the citizen petition claim. Each very different. Each involving different facts. The Walker process, for example, relates to, as was mentioned. But isn't all that they needed to show was under one of those theories, the reverse payment theory, that they were entitled to relief? And that's not based on patent law. No, no, Your Honor. It's the other way around. All we have to do for purposes of federal circuit jurisdiction is that there be one claim. That's not what Christensen says. I believe it does, Your Honor. But what if it's a theory supporting a claim of monopolization? So the key issue is discerning the difference between a claim and a theory. So if in Christensen you had three alternative theories that each gave rise to the same kind of relief, the very same relief that was claimed underneath the falsity of that cease and desist letter would have been able to be obtained. Now, would you agree with me if there were non-patent law theories in every claim? Yes. In every claim that under Christensen there's jurisdiction in this court. If for each claim there are non-patent law theories in each claim that could support that independently, I would agree. I don't believe that is the situation. But if it's not a separate walker process claim here, why is that statement not controlling in our decision on jurisdiction? Well, I think that what you're doing is putting the cart before the horse. I made the question. I made the question. But if you accept the proposition, to answer your question directly, if you accept the proposition that walker process is merely a theory supporting some claim and that all of these instrumentalities, if you will, of wrongdoing qualify as theories, then I think it would be, if you accepted the idea that at least one of those did not arise under the patent laws, then the regional circuit should take the case. As we've all struggled with the meaning of claim, it does seem that if not consensus, there is some measure of agreement that what we're talking about is an aggregate of operative facts which form a claim. Have we come to grips, though, with what a theory is? Well, I think a theory would be anything not fitting that definition, Your Honor. And I realize that may sound circular, but the fact is that it's entirely unsatisfying. It is unsatisfying. I would concede that. But I think, you know, I think if we look at Christensen where you sort of just looking at logically what was occurring there, you had alternative reasons for this more discrete kind of claim that is the faulty synthesis letter. You could take any claim. If we have a series of claims and just one of those claims is dependent upon a resolution of patent law, then jurisdiction should be seated in the federal circuit. Correct. That is what Christensen says. That is what the rules say. And that is if you have a separate claim. Separate claims. It all turns on whether you have discrete claims versus theories, you know. And would you agree that the – I'm sure you agree that merely by setting out what a count is, a plaintiff, even as master of the complaint, can't determine what's a claim and what isn't. Absolutely, Your Honor. So assuming that is the case, is there anything within the rules of civil procedure that can assist us in teasing out just what constitutes a claim and what constitutes a claim in this case? Well, I would point, for example, to Rule 54B of the federal rules, where – and that's an issue that's going to be coming up in the next argument, where these plaintiffs made the very same analysis on the same – In 54B. And articulated their Walker process and activist claims – As discrete claims. As discrete claims. The definition of claim as under 54B and – But that ain't your case. It isn't, but it is telling. And I think these are many of the same parties and very much the same plaintiff lawyers. So it isn't, but I think it's background. Isn't part of the problem that whether it be Christensen, whether it be a – what is it? AADVP of the Second Circuit, whether it be our court in Wells Fargo, that we tend to use the words claims and theories almost interchangeably when perhaps we should not. I think that is part of the issue, and the nomenclature here is difficult. On DDAVP, I would just point out, Your Honor, that there the court wasn't confronted with this question of claim versus theory. There the defendants – They used the words interchangeably at times. They used the word interchangeably, and the defendants in that case more or less conceded that the theories, that they each would qualify as a theory, didn't make the arguments about claims and just simply argued that both theories depended on the patent law. That is not what we're arguing here. So in the effort to sort it out, might we not go back to Christensen in the sentence that said that there were theories that supported a claim, and if that's correct, because it seems to make some sense, I'm making a claim X, and these A, B, and C are my theories that support my claim of X, then here one could make an argument that there is a monopolization antitrust claim, and that the theories are that at one point there was fraud on the PTO, and the monopolization actually began many years later when the so-called fraudulent patent was continued on the exclusivity period, in this case from March of 10 through November of 11. Well, Your Honor, I would – Go ahead. How I would respond to that is that I think when you look at the case law, when you look at cases like the Cipro case, like the Davis case from the Federal Circuit that we cite, like the Warrior Sports case, many of those cases, what you look at is the operative facts, just putting a label of overarching scheme onto a complaint isn't enough without more to turn it into just one big claim, and everything else by definition underneath it is a reason supporting the claim. Let me give you one example. Put yourself in my shoes. Yes. You're writing this opinion. Yep. Forget who wins and loses. How do you differentiate, for purposes of going forward, claims versus theories and how they fit into the process here of determining appellate jurisdiction? What I would say is, are the operative facts being alleged sufficiently distinct in terms of the facts that they're claiming and the relief being sought, which is so critical? What was the relief sought here for the Walker process fraud? First of all, you've got the issue of different parties. What was the relief sought here for the Walker process fraud? Well, since the plaintiffs lumped everything together, they're not articulating different relief. If you look at what they argue in the 54B and the other case, they talk about how there are very different ways of looking. First of all, there's not joint and several relief available, because for Walker process it's only directed at Pfizer. The nature of the injury is different, because if they prevail, which I don't believe they will, but if they prevail on a Walker process theory, then the idea is that the 995 patent should have never existed, so we can go back to the expiration of that original compound patent and ask the question of when would the generic have been able to come in in a world of doubt? Which is March of 2010. Right, which is a very different kind of theory of recovery and damages than you would have in the activist case, where there, 10 years later, you've got the temporal aspect as well. I keep pronouncing activists as activists or activists. I'm not 100% sure. I didn't say activists, but you're wrong. But I would say, Your Honor, so in that case, you have different patents at issue being litigated, and so the question there is if they could prove that that agreement was unlawful, then you would be asking what would have happened in a world without that settlement in respect of those patents? What would have happened to those patent litigations? Would there have been an alternative settlement against the backdrop of those patent allegations, different patents, and very, very different theory of relief. And I think that that is a key differentiator between this case and Christensen and many of the other cases. And, again, it's something that the plaintiffs themselves argue in the other case was a key differentiating factor separating a claim and a theory. So I think those factors, and the case law supports you. If you look at cases like Davis, like the Ritz-Cameron case from the Federal Circuit, where there you had walk of process, you had a claim of. . . But before you sit down, again, in theory, do theories support claims? Do theories support claims? In other words, you have a claim, and you have theories that attempt to support that claim. Is that correct? I don't believe that's what we have here. No, but in theory. In theory, yes. That is a good way to think about it, that you're differentiating between theories that can support a claim. And, really, I think what this comes down to is can you ignore the substance? These are really different claims, you know, different bodies of law. That wasn't my question. I understand. The key point you have to make, your theme has to be these are different claims. Absolutely. I get it. And that is our position, and we think the case law supports us. And, Your Honor, I know I'm well past my time. Let me ask one simple question. It's not a theory. Sure. Why didn't you move in this case to transfer this case to the federal circuit? I think we saw the we, I'm trying to remember the timing now. I believe this was your first. This was the 14th appeal. Okay. That's right. And I think we made a determination that the admissions in the other case were just so compelling that it warranted bringing it to the court's attention early. In this case, we decided that we would raise it for the first time on the merits of the appeal. All right. Yeah. While we hear from Mr. Lefkowitz. And I'll stand on our papers with respect to Mr. Alioto's argument. Thank you very much. Good morning, Your Honor. It's Jay Lefkowitz. I think we've fairly narrowed the scope of what is really at issue, and I want to, I think, answer both Judge Ambrose's question about how to write this opinion and also Judge Fisher's question, which is, if there is any non-patent theory in every claim, is there still mandatory federal jurisdiction? And I think the answer to both your question, Your Honor, and how to explain the decision here, if you transfer the case, that I think is obligated to be the case, is to focus on the operative language in Christensen. When Christensen, after articulating the standard, which Judge Ambrose, you're absolutely right, says, if there is a claim in the case, and the claim in that patent law is a necessary element of a well-pleaded claim. And I think that is certainly the case here. But that's not the operative language. The operative language is the patent law issue, while arguably necessary to at least one theory under each claim, is not necessary to the overall success of either claim. And that's the critical issue. In this case, when plaintiffs filed their complaint, their damages period, and I think Judge Ambrose, you alluded to this, began on March 24th of 2010. When Judge Sheridan threw out the Walker process claim, he, of course, had to limit damages to the period after June 28th of 2011, a year later. Because if the patent wasn't invalid, then you obviously have a later date at which there could be potential competition. You mean the 995 patent? Correct. And so that is really the critical question. You don't have alternative theories when they give rise to actually different forms of relief. And that's why what Christensen says is so critical. When it looks at that case, that what was happening was Colt Industries, the former employee would say, well, on the one hand, you guys have given me authorization to use the product. And on the other hand, you failed to disclose something to the patent office. And if I win on either one, these are fungible, alternative theories, then I prevail. And the court said, well, so you could prevail. You could get the overall success without touching patent law. That's not the case here. And I think although Christensen might not be the cleanest, clearest possible opinion in its early discussion, I think that's the hammer. That's the fundamental explanation. If I'm suing someone for negligence because he runs me over in an intersection, I have alternative theories. On one hand, he might have been drunk. On the other hand, he might not have had his car repaired. Or on the third hand, he might have been speeding. Those are all alternative theories that would get me the same recovery. Here, there is fundamentally a different recovery. And at J58, the court makes it very, very clear as to the different damages. How would you distinguish DBABP? So I wanted to actually touch on that in the Hardy case before I sit down. DBABP, I think, if you read the operative language in the court's decision, and this is at page 687, it says, the plaintiffs themselves see the petition as only a single piece of a larger anti-competitive scheme in which the patent is the linchpin. And here's the key language, going back to the point I just made. But the relief sought by the plaintiffs is not inextricably tied to this larger scheme. The plaintiffs simply asked for a judgment declaring the defendant's action to have violated the Sherman Act. In other words, they just wanted an injunction. They weren't looking for, at least as the court articulated it. Maybe the court got it wrong. If you read the cert petition in that case, there's arguments to think that the Second Circuit misread it. But on the theory under which the Second Circuit reached its decision, it's actually not objectionable because they were articulating that the theory of relief was just an injunction and they could have gotten that relief either way. In our case, the relief is very different. If we go your way, isn't there a good argument from the other side that you now have a circuit split? I don't think that there are. Well, certainly they could. I'm not saying they prevailed. I said, isn't there a good, plausible argument on their side that there is a circuit split? They can certainly argue that based on a reading of DDAVP, the Second Circuit could be in tension. I think that a careful reading of what the court actually articulated in DDAVP is actually consistent with the holding that we're issuing here. If there's an underlying mistake in what the court was evaluating, I don't think that would create the circuit split because I think the actual holding and the justification for their holding is consistent. There may have been some facts that they misread. In light of the teasing out of Christensen in activists and in light of what went on in DDAVP seven years ago, it would seem that the Supreme Court is still evolving in terms of how it deals with these issues. Is that correct? It is certainly evolving in how it deals with the questions of what are so-called reverse payments and the anti-competitive aspects. We're now at the beginning of the rule of reason. Next week, we have the first appellate argument in the first case tried after activists. But I don't think that there's really any question. It goes back to Noble Pharma and to the Cipro case that when you have a Walker process claim, and they even acknowledge this in their briefing, if there's a Walker process claim, that gives rise to federal jurisdiction. Under Christensen, if the Walker process claim is necessary to the full measure of... Correct, federal circuit. The last point, if I just may, in 30 seconds, they referenced the court's very recent opinion in Hardig. First of all, this court has said many times as recently as August in the Goldman versus Citigroup case that a summary and unexplained jurisdictional ruling, what they call in this court a drive-by jurisdictional ruling, has no precedential effect. But I would further say that in that case, it's actually the opposite of what we have here. Hardig, in that case, could have gotten all of the relief they were seeking without proving the fraud on the PTO. The fraud on the PTO actually began a year or two after the other anti-competitive alleged conduct. So, in fact, you could have gotten all of the relief in Hardig solely based on the non-patent issues. So, again, I think the simplest, cleanest reading of Christensen is to just focus on what a claim is. And here, when you have claims based on conduct that took place 10 years ago involving one party and its dealings with the patent office, that's clearly a different claim for relief than a claim raised involving conduct 10 years later involving two parties. But the linchpin is what was the linchpin in Christensen. That to get the overall success they need, you have to drive through a substantial question of patent law. Thank you. Mr. Leibowitz. Thank you. May it please the Court, Noel Leibowitz for the Daiichi Sankyo defendants. And, Your Honors, I have just two minutes to address an issue that is unique to the Daiichi Sankyo defendants because we've been pleaded only in one complaint out of the two dozen or so that have been consolidated into the Lipitor MDL, and that's the RP healthcare complaint that Your Honors have heard about. And the issue I wanted to discuss is the remand question that Mr. Aliotto addressed. There's no reason to remand in this case back to the California State Court. First, as the questioning before Mr. Aliotto. The question was do you remand for determination of the LLC as to is it diverse or non-diverse? Yes, Your Honor, and we believe that as pleaded in the complaint, the parties are diverse. The only remaining parties are diverse, and the two non-diverse parties. Do you remand for the LLC? As pleaded, we do, Your Honor. That's what the plaintiff, RP Healthcare, pleaded in their complaint that there was the citizenship of the party. What is the citizenship of the LLC? I don't have the citizenship of the LLC in front of me, Your Honor, but I know that it was in California because the only two California defendants were the two that have settled out of the case. But don't you look to the members of the LLC? Do we know how many members were in this LLC? That's not in the record, Your Honor, as to how many members are in the LLC. Is Judge Fischer correct that we don't know? That is correct, Your Honor. We don't have in the record who the members of the LLC are. But, Your Honor, we would say that, again, as pleaded, looking at the face of the complaint, the parties are diverse, and the only two non-diverse parties settled out, which was precisely the case in the Caterpillar case. Secondly, Your Honor, I would also say that we may not need to get to the diversity issue. My point is, as pleaded, don't get us nowhere, necessarily, right? It depends on what the actual, you know, one could argue, and I have argued in an opinion, that the LLC should have a place rather than where all of its members are, the same as partnerships. But that's not what they're doing. And so if you don't know where the members are from, isn't that a question mark that needs to be resolved for purposes of determining diversity jurisdiction? With respect, Your Honor, I think you're absolutely correct that the record does not reflect where the members of the LLC are. We don't think that you need to look at that for two reasons. One, because of the way it's been pleaded, the complaint states on its face where those parties are. But secondly, Your Honor, I would just say... It could have been pleaded not completely, incorrectly. I mean, I can't change how the Supreme Court goes about determining diversity jurisdiction here. You've got to look to where the members are. If you have one in California, then you may have a problem. Can I just address one other issue, Your Honor, which is before we... Without getting to diversity, we believe that there's no basis for remand on federal question grounds as well. And, Judge Ritcher, I think you raised the question of whether the district court raised the issue only with respect to defenses, that there could be potential patent defenses, and that could be an error. But, Your Honor, it's not only the defenses that raise the patent issues in this case. Even as Mr. Aliotto argued the case himself and as the briefing reflects, the expiration of the patents, which patents were in force, what they covered, and when they expired, is not only a defense. It's a part of plaintiff's affirmative case to make out what patents were in force, what they covered, and when they expired. And the Army health care plaintiffs have tried to sort of shortcut that by looking to a statement that the Pfizer CEO made in a book. But all those questions about which patents were actually in force and what they covered, what the dates of expiration, those are all questions of federal patent law and for federal question grounds support removal of the case to the federal courts. Thank you very much. Thank you. We'll get Mr. Sorensen back. Yes, Your Honor. I want to start to clarify the record with respect to DDAVP. I was one of the plaintiff's counsel in that case. The opinion states that plaintiffs sought judgment that the defendants had violated the Sherman Act. The complaint is not seeking an injunction. The complaint is a matter of public record in the district court. It states the plaintiff is seeking judgment declaring defendant's actions as alleged to be a violation of Section 2 of the Sherman Act. I'm reading from Document 29 in the district court. The court specifically dealt with this issue of damages and said as follows. The defendant stressed, and I'm reading from page 687 from DDAVP, the defendant stressed that the plaintiff's patent-related theories are essential to the overall relief the plaintiffs seek because the citizen petition theory covers a time period shorter than the overall allegations. But this fact lacks jurisdictional significance. And then it goes on. Focusing on claims, not theories, we have jurisdiction as long as any one of the theories can support the claim without raising substantial questions of patent law. In this case, we sought a judgment. I'm reading from JA page 297, demand for judgment. Enter joint and several judgments against the defendants in favor of the direct purchasers and the proposed direct purchaser class. Similar requests for demands for judgment appear in the end payers' complaint. In Christensen on page 2175 of the Supreme Court edition, it states, since there are reasons completely unrelated to the provisions and purposes of federal patent law, why petitioners may or may not be entitled to the relief they seek under their monopolization claim, citing Franchise Tax Board, the claim does not arise under federal patent law. We've pled a scheme claim. There is nothing improper about that. It's a recognized claim. Judge Jordan, sitting as a district judge in Abbott v. Teva, 432F sub 2nd at 428, upheld such a claim. This court in LaPage, citing Cutnell-Orr, said, as the Supreme Court recognized that the courts must look to the monopolist's conduct taken as a whole, rather than considering each aspect in isolation. The court stated, quoting the Supreme Court, in a case like the one before us alleging section 1 and section 2 violations, the duty of the jury was to look at the whole picture. That's LaPage at 324F 3rd at 162. We are permitted to plead a scheme claim. We're permitted to go to the jury on that claim and have a jury verdict that, obviously given the evidence that we present, that matches up with that claim. There is no violation of the well-pleaded complaint rule that the defendants have pointed out. There is no recognized exception to that that permits this court to reconfigure and rewrite the plaintiff's well-pleaded complaint in a way that the defendants would prefer, defendants of the federal circuit. That is not recognized under the law. My time is well up. If you have any further questions. Thank you very much. Thank you. I'm going to ask if counsel would get together afterwards and have a transcript prepared of this whole argument and submit it to us. Please, Mr. Elliott. Mr. Elliott has a minute. Oh, I'm sorry. Mr. Elliott, I apologize. Mr. Elliott, you asked for a minute. You can have it. Please, Your Honor. Thank you for the extra minute. I would point out, first of all, that in terms of diversity of citizenship, it is a requirement of the defendant to try to prove that. And secondly, I would point out, as we did in our brief, the statement by Justice Scalia, that it's the time of filing at which these are determined. And when we filed our First Amendment complaint, of course, we had those two other companies. It is normally the time of filing, but isn't there an exception if you settle? I do not believe so, and that would certainly jeopardize settlement, I would think, throughout the country. I mean, suppose someone were in a state court, and if they settled with a defendant, they would then lose diversity, they wouldn't settle, maybe. So I think that that would have a chilling effect, Your Honor, if I do not believe that is the rule, and it certainly was not the rule Justice Scalia called it a first-year situation. Are you sure about that? Are you sure it's not an exception? Well, let me say that, first of all, I'm not going to say for positive, but I would say that if such were a rule, that that would definitely be a chill on anybody trying to settle in a lot of different cases. And then, again, I wanted to emphasize, as not stated here by distinguished counsel, that as the court knows, the West Virginia court, which also used our complaint, also remanded it to the state court in West Virginia. And so there is a conflict between Judge Sheridan and the chief judge of West Virginia. And then the final thing that I would say is that all of these cases are with regard to the so-called agreement. And the agreement, and the agreement, it's not like a reverse payment. The agreement was after, according to the chief executive officer and chairman of the board, it was after the patents expired. And if they're expired, they don't exist. And if they don't exist, it's a down-and-dirty, old-fashioned antitrust conspiracy to divide markets and fix prices. Thank you very much. You already know my request for the transcript, so thank you to all counsel for well-presented arguments. And we'll take the matter under advisement and call the hearing.